**19 CV 04616**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

DISCOVER GROWTH FUND, LLC,

        Petitioner,

v.

CEMTREX, INC.,

        Respondent.

---------------------------------------------------------------x

: Civil Action No:

## PETITION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IN AID OF ARBITRATION

Petitioner Discover Growth Fund, LLC ("Petitioner" or "Discover") through counsel alleges as follows:

1.    This application is made for injunctive relief in aid of a currently pending Arbitration Proceeding.

2.    On May 13, 2019, Discover submitted a Demand for Arbitration with JAMS against Cemtrex, Inc. ("Respondent" or "Cemtrex") pursuant to a mandatory arbitration clause contained in Section VI.H of the March 22, 2019 Securities Purchase Agreement ("SPA") between Discover and Cemtrex.

### The Parties

3.    Discover is a U.S. Virgin Islands limited liability company, with its principal place of business in the U.S. Virgin Islands.

4.    Cemtrex is a Delaware corporation with a principal place of business in Queens, New York.

### Subject Matter Jurisdiction

5.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §

1332(a)(1) because there is diversity of citizenship and damages in excess of $75,000.

## Personal Jurisdiction and Venue

6. The Court has personal jurisdiction over Cemtrex because its principal place of business is in New York.

7. Venue is proper in this district because Continental Stock Transfer and Trust Company ("Continental"), Cemtrex's previous transfer agent, resigned as transfer agent in this district and because the Irrevocable Transfer Agent Instructions by which Cemtrex failed to bind its successor transfer agent state that "any action arising out of or relating to these instructions will be filed in the U.S. District Court for the Southern District of New York."

## Background

**A.     The Parties Sign A Binding Contract And Discover Funds**

8. On August 20, 2018, a Cemtrex representative contacted Discover, an investment fund, in the U.S. Virgin Islands concerning a possible financing that would give Cemtrex a much-needed capital infusion.

9. Despite having a market cap of only $5 million, Cemtrex is nearly $20 million in debt, and lost over $10 million last year. Its stock price has plummeted more than 95% since the beginning of 2017, from over eight dollars to less than thirty-five cents. In October 2018, its stock price fell below a dollar, and it is now a penny stock that has already been notified by The NASDAQ Stock Market LLC ("Nasdaq") that it may be delisted. When it reached out to Discover, Cemtrex had almost no working capital left, was unable to afford to purchase inventory of its only product, a computerized smart desk, could not fulfill orders and was on the verge of going out of business.

10. Discover determined that investing money in Cemtrex would be a speculative investment and extremely high risk. In order to appropriately balance risk and reward on any

investment in Cemtrex, Discover had to have both a sizable potential return on investment (ROI) and significant downside protections. To protect itself, Discover negotiated for extensive terms and processes in the SPA, further detailed below, to ensure full compliance by Cemtrex.

11.     On March 22, 2019, Cemtrex and Discover entered into the SPA.

12.     Pursuant to Section II.D. of the SPA, Discover paid Cemtrex $500,000.00 in cash by wire transfer on March 22, 2019, as payment in full for 1,050 shares of Cemtrex's Series B Redeemable Convertible Preferred Stock ("Preferred Shares").

13.     Under the SPA, Discover has the right to convert its Preferred Shares into Common Shares at any time in its "sole and absolute discretion." (SPA § V.A.1.a.) Cemtrex expressly acknowledged that "conversion of Preferred Shares and resale of Conversion Shares will result in dilution, which may be substantial; the number of Conversion Shares will increase in certain circumstances; and Company's obligation to issue and deliver Conversion Shares in accordance with this Agreement and the Preferred Shares are absolute and unconditional regardless of the dilutive effect that such issuances may have." (SPA § III.A.12.c.) The straightforward purpose of this provision is to ensure that Discover receives Common Shares that it can sell into the market to generate a return on its investment.

14.     The SPA provides that upon conversion by Discover, Cemtrex must "immediately comply with the Delivery Notice and deliver the number of Conversion Shares stated in the Delivery Notice forthwith." (SPA § V.A.1.c) (emphasis added). Moreover, Section V.A.1.f of the SPA states in full:

> Notwithstanding any other provision of any Transaction Document: all of the requirements of this **Section V.A** are each independent covenants; Company's obligations to issue and deliver Conversion Shares upon any Delivery Notice are absolute, unconditional and irrevocable; any breach or alleged breach of any representation or agreement, or any violation or alleged violation of any law or regulation, by any party or any other person will not excuse full and timely

performance of any of Company's obligations under these sections; and <u>under no circumstances may Company seek or obtain any temporary, interim or preliminary injunctive or equitable relief to prevent or interfere with any issuance of Conversion Shares to Investor</u>. (Emphasis added.)

15. In addition, Section VI.I.2 of the SPA provides that: "Company further acknowledges that it has an adequate remedy at law with respect to **Section V.A** in a claim for money damages; accordingly, Company may not restrain or enjoin its transfer agent, Investor or any brokers from receiving or reselling any Conversion Shares, and any action for temporary, preliminary or final injunctive relief filed by Company or on its behalf will be immediately and automatically dismissed."

16. In order to ensure that shares were automatically issued upon receipt of a Delivery Notice, Cemtrex provided an irrevocable instruction letter (the "**Irrevocable Transfer Agent Instructions**") to its transfer agent, Continental, issued pursuant to Section II.B.3 of the SPA. The Irrevocable Transfer Agent Instructions are attached as Exhibit 3 to the SPA, and incorporated by reference therein. (SPA § VI.Q.)

17. The Irrevocable Transfer Agent Instructions are Cemtrex's "irrevocable, absolute and unconditional instruction, authorization and direction" to its transfer agent, providing that "whenever either Company or Investor provides you with a Delivery Notice … <u>issue the Shares requested</u>." (Emphasis added.) Moreover, Cemtrex and Continental agreed that "Company may not instruct you to delay or disregard any … Delivery Notice and you may not do so. You are to comply promptly with any Delivery Notice … received from Investor, notwithstanding any contrary instructions from Company." Additionally, the Irrevocable Transfer Agent Instructions require any successor transfer agent to be bound by the same irrevocable terms and conditions that applied to Continental, the previous transfer agent:

> Company will not replace you as Company's transfer agent, until a reputable registered transfer agent has agreed in writing to serve as Company's transfer

4

> agent and <u>to be bound by all terms and conditions of this letter agreement</u>. You may resign as Company's transfer agent without condition. In the event that you resign as Company's transfer agent, Company will engage a suitable replacement reputable registered transfer agent that will agree to serve as transfer agent for Company and <u>be bound by the terms and conditions of these irrevocable instructions</u> as soon as practicable and in any event within two (2) Trading Days (it being understood that your resignation shall not be conditioned on any such engagement of a replacement transfer agent). (Emphasis added.)

Moreover, the definition of "Transfer Agent Instructions" in the SPA states that the instructions apply to "any successor transfer agent for the Common Stock." (SPA Exhibit 1).

18. In a conference call with Cemtrex and Continental while negotiating the terms of the Irrevocable Transfer Agent Instructions, Continental repeatedly told Cemtrex that they should not agree to the deal. Continental said it had had instances of companies having buyer's remorse, and wanting to dispute share issuances after having already agreed they could not. Continental repeatedly warned Cemtrex that it would honor the Irrevocable Transfer Agent Instructions, and that the fund would have an absolute right to obtain any number of shares it asked for, even if the company did not agree.

19. In Discover's discussions with Cemtrex prior to entering into the agreement, the parties discussed Cemtrex's absolute obligation to issue shares, and Discover repeatedly explained that the company could not refuse to issue shares on the grounds that it disagreed with a calculation in a Delivery Notice. Instead, its sole remedy would be to seek monetary damages in arbitration. The company repeatedly acknowledged to Discover that it understood and agreed with this provision.

20. The contract was extensively negotiated, with many changes over multiple drafts. Cemtrex was represented in negotiations by its chairman and CEO, by attorneys at Olshan Frome Wolonsky, and by investment bankers at RHK Capital. The final agreement was reviewed and

unanimously approved by the company's board of directors.

### B. The Mechanics of Converting Shares Under A Conversion Request

21. The procedures for conversion are set forth in Section V of the SPA. Under Section V.A.1.a of the SPA, Discover may convert one or more of its Preferred Shares to Common Shares at any time by delivering a written "**Investor Conversion Notice**" or "**Conversion Request**" to Cemtrex. As soon as possible, and in any event within one trading day, Cemtrex must transmit the Delivery Notice to its transfer agent, copying Discover, "with instructions to immediately comply with the Delivery Notice and deliver the number of Conversion Shares stated in the Delivery Notice forthwith." (SPA § V.A.1.c.)

22. The transfer agent, in turn, must issue the Common Shares requested pursuant to to the Irrevocable Transfer Agent Instructions. Thus, the agreed process ensures that Discover will continue to receive Common Shares even if Cemtrex completely refuses to cooperate.

### C. Discover's April 18 Conversion Request

23. On April 18, 2019, Discover issued its second Conversion Request to Cemtrex with respect to 200 shares of Series B Preferred Stock with a face value of $100,000.

24. Cemtrex contested the calculations in the Conversion Request, and Discover responded that the calculations were correct. Unbeknownst to Discover, Cemtrex instructed Continental not to comply with the request in violation of the Irrevocable Transfer Agent Instructions.

25. After repeated inquiries attempting to determine why the Conversion Shares were not issued, Discover was advised by Continental that it had been served with a court order.

### D. Cemtrex – In Breach of the SPA – Seeks a TRO and Preliminary Injunction

26. On April 25, 2019, Discover received a Federal Express package containing a copy of an Order to Show Cause for Preliminary Injunction and Temporary Restraining Order

entered in *Cemtrex, Inc. v. Discover Growth Fund, LLC et al.*, Civil Action No. 19-cv-03587 (GBD) (S.D.N.Y.) (the "Related Action"). Cemtrex obtained the TRO and sought a preliminary injunction in clear violation of Section VI.I.2 of the SPA.

27. Cemtrex's papers in support of the TRO and preliminary injunction contained multiple representations attesting to the Company's financial troubles. The memorandum of law in support of the TRO stated that "[f]or a company like Cemtrex, a tumbling stock price causes grave harm. . . . It makes it almost impossible to raise capital." It also detailed the threat of delisting from Nasdaq that Cemtrex faces and stated that "most companies cannot recover from" "tumbling stock price" and "delisting from the NASDAQ." Cemtrex's CEO, Saagar Govil, submitted a declaration in support of the TRO, which likewise stated that a "plunge in stock price causes immeasurable harm to a small, microcap company such as Cemtrex, which is struggling to grow." In its memorandum of law in support of the preliminary injunction Cemtrex stated that if the Court were to deny the the injunction that Cemtrex sought, it "is Likely to Force the Company into Insolvency or Bankruptcy." (Emphasis added.)

28. Cemtrex's attorney at the April 30, 2019 hearing in the Related Action made similar representations about the Company's inability to raise additional capital in light of the declining stock price, stating the Company is "worried that a precipitous continuing drop in the share price could spell disaster" and that "[t]he company may not be able to raise any more money." At the hearing, the Court denied Cemtrex's motion for preliminary injunction and lifted the TRO.

### E. Cemtrex's Failure To Retain A New Transfer Agent Bound By The Irrevocable Transfer Agent Instructions And Refusal To Honor Conversion Requests

29. Continental informed Discover through counsel on April 29, 2019 that Cemtrex had attempted to terminate Continental as transfer agent on April 18, 2019 – the day Discover

7

made its second Conversion Request. Continental took the position that Cemtrex's attempt to terminate it was not effective without notice to holders. Nevertheless, in the face of the termination, Continental attempted to resign, but was unable to do so before the market closed on April 18, 2019 – leaving it in a state of limbo given that the second Conversion Request remained pending. Because Discover understood that Continental was likely to resign following the outcome of the hearing in the Related Action, Discover reached out to Cemtrex on April 29, 2019 to remind the Company of its obligations under the Irrevocable Transfer Agent Instructions and the SPA "to engage a new reputable registered transfer agent that will agree to be bound by the terms and conditions of the irrevocable transfer agent instructions as soon as practicable and in any event within two trading days." Discover also asked Cemtrex to "provide a copy of the irrevocable instructions signed by the new transfer agent within five trading days of the date hereof." Discover never received a response to this email.

30. On May 6, 2019, Discover sent Cemtrex an additional Conversion Request and the supporting calculations.

31. On May 7, 2019, Cemtrex's new attorney – Amiel Rossabi – sent Discover a letter disputing the calculations in the May 6, 2019 Conversion Request and stating that because the calculations were allegedly incorrect, "the conversions will not be issued."

32. In response to inquiries from Discover's attorney regarding the status of Cemtrex's transfer agent, Mr. Rossabi wrote an email to Discover's attorney stating that "the status of a Transfer Agent is of no further import to Discover" because of Discover's alleged breach of the SPA, but "out of the abundance of caution, though, my response to your request is that Continental resigned on or about 5/2/19 and Clear Trust, LLC. was retained as Transfer Agent on or about that same day."

33. Having been informed by Mr. Rossabi that the Company was not going to honor the Conversion Requests, on May 8, 2019, Discover forwarded to ClearTrust, the new transfer agent, the Conversion Request that Discover had sent Cemtrex on May 6, 2019. ClearTrust indicated that it has received the Conversion Request and that it was being reviewed.

*34.* ClearTrust sent Discover an email on May 9, 2019 stating that in order to complete the Conversion Request, it would need several documents, including "Issuer approval, since we do not have a TA letter on file for CETX." In other words, ClearTrust communicated that Cemtrex had not bound ClearTrust to the Irrevocable Transfer Agent Instructions (or any instructions for that matter), contrary to Cemtrex's obligation to do so under the Irrevocable Transfer Agent Instructions and the SPA. In response to ClearTrust's emails, Discover sent ClearTrust the documentation it requested as well as the Irrevocable Transfer Agent Instructions, noting that the instructions apply to any successor transfer agent. On May 9, 2019, ClearTrust informed Discover that it had rejected the Conversion Request because it did "not have sufficient documentation from [Cemtrex] to authorize" the conversion. Moreover, ClearTrust informed Discover that it was "not the transfer agent for the class of preferred stock involved in this transaction." In response, Discover asked Cemtrex to "[p]lease immediately provide ClearTrust with sufficient documentation to issue the common stock." *Id.*

35. On May 10, 2019, Discover provided Cemtrex with an additional Conversion Request and supporting calculations. In response, on May 11, 2019, Cemtrex's attorney, Amiel Rossabi, sent Discover and Discover's counsel an email indicating that Cemtrex was denying the May 10 Conversion Request and referred Discover to his May 7, 2019 letter.

**F.   Cemtrex's Material Breaches of the Agreement**

36. Cemtrex materially breached the SPA by refusing to engage a transfer agent bound by the Irrevocable Transfer Agent Instructions and refusing to honor Discover's

Conversion Requests despite Cemtrex's absolute obligations to bind any new transfer agent to the instructions and to honor Conversion Requests under the SPA. While Cemtrex is free to contest Discover's calculation in the Conversion Requests and seek money damages in an arbitration proceeding, it is not free to interfere in the issuance of shares in the meantime. The agreement is clear that contesting a calculation is not a valid ground to refuse to issue shares. Discover cannot wait for arbitration to seek relief from Cemtrex, particularly given that Cemtrex is on the verge of insolvency and has over $19 million of debt—much of it secured, and all of which is senior to Discover's preferred stock—that may effectively preclude Discover from recovering any money judgment against Cemtrex.

37. The parties expressly contemplated that there might be a dispute, and agreed to allocate that risk to Cemtrex. Having received half a million dollars from Discover, Cemtrex now wishes to deprive Discover of the benefit of its bargain.

## PRAYER FOR RELIEF

WHEREFORE, Discover prays for a preliminary injunction pending resolution of the arbitration to be entered:

A. Restraining Cemtrex from using or utilizing any services of ClearTrust or any other transfer agent, unless and until ClearTrust or any other transfer agent agrees in writing to be bound by the terms and conditions of the Irrevocable Transfer Agent Instructions (Exhibit 3 of the SPA);

B. Restraining Cemtrex and its officers, directors, employees, attorneys and agents, including without limitation Saagar Govil, Aron Govil, Paul Wyckoff, Sunny Patel, Raju Panjwani, Metodi Filipov, Mark Basile, The Basile Law Firm, Amiel Rossabi, Rossabi Law Partners, Charles Lockwood, Dudley Newman Feuerzeig LLP, ClearTrust and any future transfer

agent, and all persons having actual notice of this Order (collectively, "Cemtrex Related Persons") from permitting or allowing ClearTrust or any other transfer agent to perform or provide any services related to Cemtrex stock for any person or entity other than Discover, unless and until ClearTrust or any other transfer agent agrees in writing to be bound by the terms and conditions of the Irrevocable Transfer Agent Instructions;

   C. Restraining Cemtrex and all Cemtrex Related Persons from transferring, issuing or delivering any shares of Cemtrex common stock to any person or entity other than Discover, unless and until the number of shares of Cemtrex common stock stated in all pending and any future Delivery Notices sent by Discover are issued and delivered to Discover's designated broker by DWAC;

   D. Requiring Cemtrex to engage ClearTrust or any other transfer agent to be bound by the terms and conditions of the Irrevocable Transfer Agent Instructions and pursuant to the Irrevocable Transfer Agent Instructions, increase the reserve of Cemtrex common stock for Discover to 15,000,000 shares;

   E. Requiring Cemtrex to issue and deliver the number of shares of Cemtrex common stock stated in all pending and any future Delivery Notices sent by Discover to Discover's designated broker by DWAC; and

F. Granting such other and further relief as may be deemed just and proper.

Dated: New York, New York
May 20, 2019

Respectfully Submitted,

RICHARDS KIBBE & ORBE LLP

By: _____
H. Rowan Gaither
*rgaither@rkollp.com*
Andrew Podolin
*apodolin@rkollp.com*
Jacob Taber
*jtaber@rkollp.com*
200 Liberty Street
New York, NY 10281-1003
Telephone: 212.530.1800
Facsimile: 212.530.1801

*Attorneys for Petitioner*